UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VICKI OLIVEIRA,<br><br>        Plaintiff<br><br>        v.<br><br>ANGELINE ELLISON-LOPES, in her personal and official capacities,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-cv-10647-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                                 **January 11, 2024**

**I.     Introduction**

Plaintiff Vicki Oliveira ("Oliveira") has filed this lawsuit against Defendant Angeline Ellison-Lopes ("Ellison-Lopes"), Town Administrator for the Town of Fairhaven, alleging violation of the Massachusetts Civil Rights Act ("MCRA") (Count I), tortious interference with advantageous relations (Count II) and a 42 U.S.C. § 1983 claim for retaliation against Oliveira's exercise of her First Amendment rights (Count III). D. 1-1 at 7-8. Counts I and III are brought against Ellison-Lopes in her personal and official capacities; Count II is asserted against her only in her personal capacity. Id. Ellison-Lopes has moved to dismiss for failure to state a claim. D. 7. For the reasons stated below, the Court ALLOWS the motion in part and DENIES it in part.

**II.    Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation

1

omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III.    Factual Background

The following factual allegations in Oliveira's first amended complaint, D. 1-1, are accepted as true for consideration of the motion to dismiss.

Oliveira and her husband, Wayne Oliveira, are residents of the Town of Fairhaven (the "Town"). D. 1-1 ¶ 1. Oliveira has been an employee of the Town since 2010 and has served as Assistant to the Town Administrator for the past five years. Id. ¶ 3. Prior to the appointment of Ellison-Lopes as Town Administrator, Oliveira allegedly received "consistently excellent employee evaluations by her supervisors" and "performed her duties in exemplary fashion" under previous Town Administrators. Id. ¶ 5. In addition to her employment with the Town, Oliveira was an appointed, unpaid member of the Fairhaven Historical Commission, of which her husband is the longtime chairman. Id. ¶ 4. The Fairhaven Historical Commission works "to protect and preserve historical buildings." Id. ¶ 11.

On April 4, 2022, Oliveira began her work for Ellison-Lopes, the newly appointed Town Administrator. Id. ¶ 3. Two months later, in June 2022, Ellison-Lopes "made known to employees

in Fairhaven Town Hall that she intended to make physical alterations to historic infrastructures/furnishings within Town Hall." Id. ¶ 6. The Fairhaven Town Hall is listed on the National Register of Historic Buildings. Id. ¶ 7. Oliveira communicated her objections to Ellison-Lopes "[o]n several occasions," expressing that the proposed alterations were "inappropriate, and out of character with the history of Fairhaven Town Hall, and against the will and interests of the citizens of Fairhaven." Id. ¶ 8. These allegedly communications were unrelated to Oliveira's duties as Assistant to Ellison-Lopes. Id. ¶ 9. Wayne Oliveira, as chairman of the Fairhaven Historical Commission, voiced similar objections to the Fairhaven Select Board and to the Massachusetts State Historical Commission. Id. ¶ 10.

As alleged, Ellison-Lopes subsequently "began treating [Oliveira] in the workplace in a personally hostile manner." Id. ¶ 12. For one example, Ellison-Lopes instructed Oliveira to send out a notice of a hearing to certain Town departments heads and chairpersons, then denied giving any such instruction and "wrongly accused" Oliveira of breaching a "duty of confidentiality." Id. On August 9, 2022, Ellison-Lopes informed Oliveira of her intent to terminate her as her Assistant due to this breach in three days on Friday, August 12. Id. ¶ 13. As a result, Oliveira "became severely hurt and emotionally upset." Id. ¶ 13. At work on the afternoon of Thursday, August 11, 2022, Oliveira "experienced chest pains a result of the stress caused by Defendant's actions" and "believed she might be having a heart attack." Id. ¶ 14. Ellison-Lopes insisted on being present while paramedics treated Oliveira, including while Oliveira was providing paramedics with her health information. Id. ¶ 14. Wayne Oliveira, who had arrived at the Town Hall to accompany Oliveira to the hospital, and Ellison-Lopes then "engaged in a verbal altercation . . . over HIPPA issues." Id.

On August 12, 2022, Oliveira received the termination letter. Id. ¶ 15. The termination letter, which was referenced in the first amended complaint, lists various reasons for Oliveira's termination as Assistant to the Town Administrator and is signed by Ellison-Lopes. D. 8-2 at 42–43; see D. 1-1 ¶ 15. Oliveira alleges that the termination letter "contained allegations that were false, trivial and out of context." Id. ¶ 15. Ellison-Lopes further served a statutory No Trespass Notice on Wayne Oliveira which prohibited him from entering the Fairhaven Town Hall for sixty days. Id. ¶ 16.

### IV.   Procedural History

Oliveira originally filed this lawsuit in Bristol Superior Court on December 27, 2022 and amended the complaint on March 10, 2023. D. 1 ¶¶ 1–2; D. 6 at 1–2. Ellison-Lopes removed the matter to this Court and has now moved to dismiss the first amended complaint. D. 1; D. 7. The Court heard the parties on the pending motion and took the matter under advisement. D. 15.

### V.   Discussion

#### A.   Official Capacity Suits

Oliveira has sued Ellison-Lopes in both her official capacity as Town Administrator and in her personal capacity for violation of Oliveira's First Amendment rights under § 1983 (Count III) and under the MCRA (Count I). The Court turns first to the claims against Ellison-Lopes in her official capacity.

##### 1.   *§ 1983*

As to the § 1983 claim, Ellison-Lopes first argues that "neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action." D. 8 at 8 (quoting Oberg v. Taunton, 972 F. Supp. 2d 174, 193–94 (D. Mass. 2013)). While that may be true, municipal officials (as opposed to state officials) are suable persons under § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978); see Lake Country Ests., Inc.

v. Tahoe Reg'l Plan. Agency, 440 U.S. 391, 401 (1979) (explaining that Eleventh Amendment sovereign immunity applies to state governments but not "political subdivisions such as counties and municipalities"). Nothing in the first amended complaint suggests, that Ellison-Lopes acted as a state official rather than a local municipal official when terminating Oliveira. Cf. McMillian v. Monroe Cnty., Ala., 520 U.S. 781, 793 (1997) (concluding that sheriff represented state of Alabama rather than local county when executing law enforcement duty). Accordingly, dismissal of the official capacity § 1983 claim is not warranted on the basis that Ellison-Lopes was a state official.

Ellison-Lopes also argues that any official capacity suit fails because Oliveira has not alleged an official policy or custom which caused deprivation of her constitutional rights. D. 8 at 9. Because Oliveira sues Ellison-Lopes in her official capacity, the real party in interest is the Town rather than Ellison-Lopes. See Hafer v. Melo, 502 U.S. 21, 25 (1991). To plead a § 1983 action against a municipality, Oliveira must show that her First Amendment rights were violated because of the municipality's policy or custom. Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 404 (D. Mass. 2020). Such policies include "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Monell, 436 U.S. at 691). In her opposition to Ellison-Lopes's motion to dismiss, Oliveira does not offer any argument as to municipal liability. D. 10 at 6-11. Nor does the first amended complaint refer to any Town policy or custom which led to Oliveira's termination. See D. 1-1. Instead, Oliveira alleges a limited scope of conduct by a single administrator which cannot form the basis of a municipal liability claim. See Minahan v. Town of E. Longmeadow, No. 3:12-cv-30203-MAP, 2014 WL 7883586, at *23 (D. Mass. Sept. 11, 2014) (granting motion to dismiss municipal

liability claim), report and recommendation adopted in part, rejected in part on other grounds, 2015 WL 668451 (D. Mass. Feb. 17, 2015).

Accordingly, the Court dismisses the § 1983 claim against Ellison-Lopes in her official capacity.

### 2. MCRA

Oliveira also sues Ellison-Lopes in her official capacity under the MCRA. D. 1-1. A MCRA claim against Ellison-Lopes in her official capacity, however, is a claim against the Town, and the MCRA does not define suable "persons" to include municipalities. Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (noting that the "Town is also entitled to summary judgment on the MCRA claim because under Massachusetts law a municipality cannot be sued under the MCRA") (citing Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92 (2001)); Fletcher v. Szostkiewicz, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (concluding that MCRA claim against mayor in official capacity "is clearly a claim against the city," which could not be sued under MCRA). Accordingly, the Court also dismisses the MCRA claim against Ellison-Lopes in her official capacity.

### B. Personal Capacity Suits

Having dismissed both claims against Ellison-Lopes in her official capacity, the Court now addresses the claims brought against her in her personal capacity.

### 1. § 1983 First Amendment Retaliation Claim (Count III)

Generally, "[c]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005) (internal citation omitted). Where a public employee contends that her government employer took an adverse employment action that violates her First Amendment rights, the First Circuit has articulated a three-part inquiry. Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir.

6

2011).  First, the Court "must determine whether the employee spoke as a citizen on a matter of public concern" and, second, "balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Id. (alterations in original) (internal quotation marks and citations omitted).  These first two elements are questions of law to be decided by the Court.  See Guilloty Perez v. Pierluisi, 339 F.3d 43, 51 (1st Cir. 2003).  If they are established, the analysis turns to the third element, wherein "the employee must 'show that the protected expression was a substantial or motivating factor in the adverse employment decision.'"  Decotiis, 635 F.3d at 29 (internal citation omitted).  Even then, "the employer may still escape liability if it can show that it would have reached the same decision even absent the protected conduct."  Id. at 30 (internal quotation marks and citation omitted).

Here, Ellison-Lopes argues that she did not violate Oliveira's First Amendment rights, because (1) Oliveira did not speak as a citizen on a matter of public concern, and (2) Oliveira's protected speech was not a substantial or motivating factor in her termination.  D. 8 at 10–12.  The Court addresses each of these arguments in turn.

          a)       <u>Private Citizen Speaking on a Matter of Public Concern</u>

As an initial matter, the Court notes that Oliveira disclaims reliance on any of her husband's statements as the basis of her First Amendment claim.  D. 10 at 8 (asserting that "although sometimes [Oliveira] did relay statements made by her husband, Wayne Oliveira, to the Defendant she does not rely on any of his statements in support of her freedom of speech claim").  Accordingly, the Court construes Oliveira's first amended claim to be based on her own statements to Ellison-Lopes, which she does alleges in her pleading.  D. 1-1 ¶ 8 (alleging that, "[o]n several occasions, [Oliveira] communicated to [Ellison-Lopes] her and her husband's opinions as both private citizens, and as members of the Fairhaven Historical Commission").  Thus the Court

focuses on whether Oliveira's communications to Ellison-Lopes regarding the proposed renovations to Fairhaven Town Hall were made by Oliveira as a private citizen on a matter of public concern.

The First Amendment distinguishes between a public employee's citizen speech, which triggers protection, and employee speech, which may be disciplined by the employer.  Lane v. Franks, 573 U.S. 228, 237 (2014).  "The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  Id. at 240.  In considering this question, the First Circuit has identified several non-exclusive and non-dispositive factors, including "whether the employee was commissioned or paid to make the speech in question; the subject matter of the speech; whether the speech was made up the chain of command; whether the employee spoke at her place of employment; whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it 'official significance'); whether the employee's speech derived from special knowledge obtained during the course of her employment; and whether there is a so-called citizen analogue to the speech."  Gilbert v. City of Chicopee, 915 F.3d 74, 82 (1st Cir. 2019) (quoting Decotiis, 635 F.3d at 32 (internal citations omitted))

Oliveira alleges that her opposition to renovations of the Town Hall "had no relation whatsoever to Plaintiff's duties as an Executive Assistant" to Ellison-Lopes.  D. 1-1 ¶ 9; see D. 10 at 7–8.  Moreover, Oliveira alleges that she communicated to Ellison-Lopes her and her husband's "opinions as both private citizens, and as members of the Fairhaven Historical Commission."  D. 8.  On a motion to dismiss, the Court infers in Oliveira's favor that her speech plausibly fell outside the scope of her official duties as Assistant to the Town Administrator, as it appears from the termination letter that Oliveira's duties as Assistant to Ellison-Lopes were largely administrative.

D. 8-2 at 43 (identifying preparation of meeting minutes, notetaking and providing "administrative support" as part of work expectations).

Ellison-Lopes argues that Oliveira spoke as an appointed member of the Fairhaven Historical Commission. D. 8 at 11. While planned renovations to the Fairhaven Town Hall may be related to Oliveira's role as a member of the Historical Commission, it does not follow that Oliveira's communications to Ellison-Lopes were pursuant, therefore, to her official duties as the Assistant to the Town Administrator. See Decotiis, 635 F.3d at 26, 32–35 (reversing dismissal of First Amendment retaliation claim where plaintiff urged parents of her clients to contact advocacy organizations regarding employer's compliance with state regulations). As alleged, Oliveira's objections that the proposed changes were "out of character with the history of Fairhaven Town Hall, and against the will and interests of the citizens of Fairhaven" do not appear to be connected to her role as Ellison-Lopes's Assistant. D. 1-1 ¶ 8; see Bruce v. Worcester Reg'l Transit Auth., 34 F.4th 129, 137 (1st Cir. 2022). At this stage of the litigation, it would be premature for the Court to conclude that Oliveira's speech was employee speech and not private citizen speech. Decotiis, 635 F.3d at 33-35.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Lane v. Franks, 573 U.S. 228, 241 (2014) (internal quotation marks and citations omitted). Speech on the topic of local historical monuments and buildings plausibly is a matter of public concern. See Jones v. Matkin, 623 F. Supp. 3d 774, 783 (E.D. Tex. 2022) (noting that parties did not dispute that speech regarding confederate monuments was matter of public concern). The first amended complaint alleges that preservation of historical buildings, such as the Fairhaven Town

Hall, was "important to the community" as evidenced by the establishment of the Fairhaven Historical Commission. D. 1-1 ¶ 11. Several allegations in the first amended complaint relate to the historical significance of the Town Hall, including that it was "commissioned by the Town's famous native son, oil tycoon Henry Huttleston Rogers," dedicated by Mark Twain and listed on the National Register of Historic Buildings. D. 1-1 ¶ 7. The Court is unpersuaded by Ellison-Lopes's objection that the complaint engages in "conclusory labeling of the speech" as a matter of public concern. D. 8 at 11.

For all of these reasons, the Court concludes that Oliveira has sufficiently pled that she spoke as a private citizen on a matter of public concern.

### b) Substantial or Motivating Factor in Termination

As to the third element, the plaintiff must show that "protected expression was a substantial or motivating factor in the adverse employment decision." Decotiis, 635 F.3d at 29 (internal quotation marks and citation omitted). Here, Oliveira has pled sufficient factual allegations to permit the Court to infer that Ellison-Lopes terminated her based on her speech. In particular, the timing of the termination, which appears to have taken place within a few months after Oliveira's speech, suggests a connection between the two events. D. 1-1 ¶¶ 6, 8 (alleging that Ellison-Lopes announced her planned alterations to the Town Hall in June 2022 and that Oliveira objected); id. ¶¶ 13, 15 (alleging August 12, 2022 termination); Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 18 (1st Cir. 2011) (explaining that "temporal proximity . . . unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated"); Koza v. Town of Westerly, No. CV 15-315L, 2016 WL 801967, at *3 (D.R.I. Feb. 8, 2016) (inferring retaliatory motive from timing of December 4, 2014 termination after plaintiff voiced objections to town officials at an October 2014 town meeting), report and recommendation adopted, 2016 WL 843269 (D.R.I. Mar. 1, 2016). Furthermore, there are alleged inconsistencies

in the reasons for Oliveira's termination. Oliveira alleges that on August 9, 2022, Ellison-Lopes expressed her intent "to terminate [Oliveira] from her position . . . for an alleged 'breach in confidentiality.'" D. 1-1 ¶ 13. The August 12, 2022 termination letter, however, makes no mention of any such breach. Id. ¶ 15; see D. 8-2 at 42–43. Oliveira further alleges that "she performed her duties in an exemplary fashion" under two previous Town Administrators, that Ellison-Lopes fabricated the supposed breach in confidentiality and that other allegations in the termination letter are "false, trivial or out of context." D. 1-1 ¶¶ 3, 5, 12, 15. Taking the first amended complaint as a whole, the Court reasonably infers that Oliveira's protected speech, which criticized Ellison-Lopes's plans, allegedly was a substantial or motivating factor in her termination. See Alston v. Town of Brookline, 308 F. Supp. 3d 509, 557 (D. Mass. 2018) (concluding that inference of causation was appropriate where defendants allegedly knew of plaintiff's complaints regarding superior officer and took adverse actions against plaintiff without properly responding to complaint).

Ellison-Lopes's argument that Oliveira would have been terminated regardless of any protected speech is a Mt. Healthy defense. D. 8 at 12 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Under Mt. Healthy, if plaintiff meets the burden of showing "the employer would not have taken adverse action but for the plaintiff's speech through direct or circumstantial evidence," then the burden shifts to the employer to "prove by a preponderance of the evidence that it would have reached the same decision [regarding the adverse employment event] even in the absence of the protected conduct." Salmon v. Lang, 57 F.4th 296, 309 (1st Cir. 2022) (alteration in original) (internal quotation marks and citations omitted). Generally, this defense, which requires shifting of evidentiary burdens, likely is "inappropriate at the motion to dismiss stage because the parties have not engaged in any significant discovery."

Landron & Vera, LLP v. Somoza-Colombani, No. 12-1858, 2013 WL 2422807, at *8 (D.P.R. June 3, 2013) (quoting Artache–Pagán v. Municipality of Gurabo, No. 12–1842, 2013 WL 1973832, at *4 (D.P.R. May 13, 2013)). Ellison-Lopes asks the Court to credit her position that Oliveira would have been fired for the reasons listed in the termination letter. D. 8 at 12. On a motion to dismiss, however, the Court must accept as true Oliveira's allegation that the poor performance described in the letter was pretextual, false or mischaracterized. D. 1-1 ¶ 15; Landron, 2013 WL 1973832, at *8 (crediting plaintiffs' allegations that they were "singled out" due to political discrimination at pleadings stage).

Accordingly, the Court denies the motion to dismiss as to the § 1983 claim against Ellison-Lopes in her personal capacity.

### 2. MCRA (Count I)

The MCRA "provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by 'threats, intimidation, or coercion.'" McLeod v. Fessenden Sch., 624 F. Supp. 3d 36, 44 (D. Mass. 2022) (citing Bally v. Ne. Univ., 403 Mass. 713, 717 (1989)). "A threat means the intentional exertion of pressure to make another fearful or apprehensive of injury or harm; intimidation means putting in fear for the purpose of compelling or deterring conduct; and coercion means the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018) (internal quotation marks omitted) (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994)). "It is rare for a MCRA claim to involve no physical threat of harm." Thomas, 909 F.3d at 492, but, "in certain circumstances, economic coercion, standing alone, may

be actionable under the [MCRA]." Buster v. George W. Moore, Inc., 438 Mass. 635, 648 (2003).[1] "Massachusetts courts have required 'a pattern of harassment and intimidation' to support a finding of non-physical coercion under the MCRA." Thomas, 909 F.3d at 493.

Ellison-Lopes argues that her statement on August 9, 2022 that she intended to terminate Oliveira was not actionable under the MCRA, D. 8 at 15, because "the termination, or threatened termination of at-will employees is not coercive in the relevant sense under MCRA." Nolan v. CN8, 656 F.3d 71, 77 (1st Cir. 2011) (citing Webster v. Motorola, Inc., 418 Mass. 425, 429 (1994)). The Court agrees that a MCRA claim is not stated merely because Oliveira was terminated from her at-will employment.[2] Instead, Oliveira argues that this case fits within the "narrow" exception for "claims based on non-physical coercion," Thomas, 909 F.3d at 492–93 (quoting Nolan, 656 F.3d at 77–78), because Ellison-Lopes engaged in "a pattern of harassment and intimidation," Thomas, 909 F.3d at 493, which began after Oliveira voiced her objections to the planned alterations to Fairhaven Town Hall. D. 10 at 12. In support of this argument, Oliveira points to her allegations of conduct that included but was not limited to Ellison-Lopes's fabrication of Oliveira's "breach of confidentiality" as an initial basis for termination, citing other false bases for actual termination, and issuing a No Trespass Notice to on her husband, Wayne Oliveira. Id.

---

[1] The Court rejects Ellison-Lopes's assertion that Oliveira's First Amendment rights were not violated, D. 8 at 13, since, as explained above, Oliveira has adequately pled a First Amendment retaliation claim.

[2] Elsewhere, Ellison-Lopes argues that "Massachusetts courts have held that termination of employment at will in reprisal for critical remarks is not actionable" unless a narrow public policy exception applies. D. 8 at 7. The cases cited by Ellison-Lopes relate to wrongful termination claims, not constitutional claims. Id. For instance, Wright involved a private employer and did not implicate the First Amendment. Wright v. Shriners Hosp. for Crippled Child., 412 Mass. 469, 473 (1992). In Flynn, the federal courts had already dismissed plaintiffs' First Amendment claim and thus the only issue before the state court in Flynn was the wrongful termination claim. Flynn v. City of Bos., 59 Mass. App. Ct. 490, 492 (2003). Ellison-Lopes has not explained how these cases are applicable to the present matter, in which Oliveira has not pled a wrongful termination claim.

As to the allegation that Ellison-Lopes fabricated Oliveira's the breach of confidentiality claim, the Court recognizes that threatening disciplinary action based on a false accusation of wrongdoing may contribute to a broader pattern of harassment. Shabazz v. Cole, 69 F. Supp. 2d 177, 202 (D. Mass. 1999) (inferring that supervisor's threat to file false disciplinary reports was "an attempt to coerce [plaintiff] into withdrawing his resignation"); Broderick v. Roache, 803 F. Supp. 480, 487 (D. Mass. 1992) (concluding that MCRA claim based on "scheme of harassment" survived summary judgment where plaintiff was subjected to multiple disciplinary hearings, which he ultimately won on appeal); Howcroft, 51 Mass. App. Ct. at 594 (concluding that MCRA claim should have survived summary judgment where defendants attempted to silence plaintiff's complaints regarding smoking by, *inter alia*, seeking to have plaintiff suspended without pay). At a later stage of this litigation, Ellison-Lopes may well show that no pattern of harassment existed or that any disciplinary action against Oliveira was not an attempt to coerce her to forgo her First Amendment rights. See Thomas, 909 F.3d at 493 (affirming summary judgment against MCRA claim where defendant's filing of investigatory report to Board of Bar Overseers was not threat, coercion or intimidation "given the record here"); Fletcher, 190 F. Supp. 2d at 232 (D. Mass. 2002) (granting summary judgment on MCRA claim where "only a single suspension is at issue" and distinguishing cases which "involve numerous instances of related objectionable conduct"); see also Horne v. City of Bos., 509 F. Supp. 2d 97, 115 (D. Mass. 2007) (granting summary judgment against MCRA claim where even "deliberately false" complaints about plaintiffs' job performance did not "amount to an attempt to force someone to do something the person is not lawfully required to do" (citation and internal quotation marks omitted)). Although it is perhaps a close call whether Oliveira has adequately alleged coercion necessary for a MCRA claim here, drawing all reasonable inferences in Oliveira's favor at this early stage of litigation, it is at least plausible that Ellison-

Lopes engaged in a pattern of harassment and intimidation to coerce Oliveira into discontinuing her continued advocacy against the planned alterations of Fairhaven Town Hall.

Accordingly, the Court denies the motion to dismiss as to the MCRA claim against Ellison-Lopes in her individual capacity.

### 3. *Tortious Interference with Advantageous Relations*

"To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007). In this context, Oliveira must show "actual malice," i.e., "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" to establish improper motive or means. Id. at 261 (citation omitted). "Certain situations lend themselves to proof of malice in the context of a tortious interference claim, such as a valid claim for unlawful discrimination and unlawful retaliation." Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 229 (D. Mass. 2002) (citing Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 77 (1st Cir.2001)).

Here, the parties agree that Oliveira must establish actual malice on the part of Ellison-Lopes to plead her tortious interference claim. D. 8 at 18–20; D. 10 at 15–16. As the Court has explained above, Oliveira has plausibly pled a valid claim for First Amendment retaliation based on her objections to Ellison-Lopes's planned renovations to Fairhaven Town Hall and her subsequent termination. Drawing all inferences in Oliveira's favor, Ellison-Lopes's attempt to "build a record of incompetence" by "purposely instruct[ing] Oliveira to do things incorrectly," D. 10 (citing D. 1-1 ¶ 12), indicates intent that was "more pernicious than mere personal dislike."

15

Zimmerman, 262 F.3d at 78.  Moreover, for the purposes of the motion to dismiss, the Court plausibly infers that the legitimate reasons provided in Oliveira's termination letters were pretextual.  D. 1-1 ¶¶ 12, 15.  Accordingly, the Court denies the motion to dismiss as to the tortious interference claim.

                4.        *Qualified Immunity*

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Pearson v. Callahan, 555 U.S. 223, 231 (2009). In determining whether a government official is entitled to qualified immunity, the Court must determine: (1) "whether the plaintiff's version of the facts makes out a violation of a protected right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021) (internal citation omitted).  As to the second determination, "[the question is not whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted." Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017).  "[F]or the right to be clearly established, the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with "fair warning." Decotiis, 635 F.3d at 37.

By 2022, the date of the alleged conduct by Ellison-Lopes, it was clearly established that a public employee must be able to speak as a private citizen on a matter of public concern without fear of termination or other retaliatory adverse actions by her public employer.  Id. at 29.  With regard to qualified immunity, Ellison-Lopes argues only that "[n]o reasonable official in the defendant's position would have believed that she was violating plaintiff's First Amendment rights

for terminating her employment based on performance issues documented in the August 11, 2022 letter discussing plaintiff's transfer and potential termination." D. 8 at 17.  Once the factual record is more complete, Ellison-Lopes may well show that qualified immunity is appropriate on this basis.  Diaz-Bigio v. Santini, 652 F.3d 45, 55 (1st Cir. 2011) (granting qualified immunity on summary judgment stage).  As previously explained, however, on this motion to dismiss, the Court must accept the factual allegations of Oliveira's first amended complaint as true and draw all reasonable inferences in Oliveira's favor, including that performance issues cited in the termination letter were pretext for retaliation for assertion of Oliveira's First Amendment right to speak as a private citizen on a matter of public concern.  See D. 1-1 ¶ 15; Maldonado v. Fontanes, 568 F.3d 263, 271 (1st Cir. 2009) (affirming denial of qualified immunity at motion to dismiss stage and declining to credit defendant's "version of what happened" which was "inconsistent with the factual allegations of the complaint").  Accordingly, the Court denies Ellison-Lopes's request for qualified immunity without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Ellison-Lopes's motion to dismiss, D. 7, as to the MCRA claim (Count I) and the § 1983 claim (Count III) brought against Ellison-Lopes in her official capacity, but otherwise DENIES the motion to dismiss so that Counts I and III survive as to Ellison-Lopes in her personal capacity and Count II, the tortious interference claim, also survives.  The Court also denies the request for qualified immunity of Ellison-Lopes without prejudice.

**So Ordered.**

/s Denise J. Casper  
United States District Judge